UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN FELIPE SALAZAR-LEYVA,<br>Petitioner,<br>v.<br>JEFFERSON SESSIONS, et al.,<br>Respondents. | Case No. 17-cv-04213-EMC<br><br>**ORDER GRANTING RESPONDENTS'**<br>**MOTION TO DISMISS**<br>Docket No. 60 |

Petitioner Christian Felipe Salazar-Leyva has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In his petition, he argues that he is entitled to habeas relief because the Board of Immigration Appeals ("BIA") violated the Constitution or other federal law by ordering his detention without bond pending removal proceedings. Previously, Mr. Salazar moved for, and was granted, a temporary restraining order ("TRO"). *See* Docket No. 20 (order). The Court found that there were serious questions going to the merits as to the two arguments made by Mr. Salazar – namely, that, in the bond determination, (1) the BIA improperly engaged in independent fact finding in violation of the Code of Federal Regulations and (2) the BIA improperly found that he had not accepted responsibility because he claimed he was not the aggressor in domestic violence incidents, even though this was a contention that he was allowed to make on the merits when challenging removability. The Court thus enjoined Respondents from detaining Mr. Salazar pursuant to the BIA decision and reinstated the earlier decision of the immigration judge ("IJ") – which the BIA had overruled – ordering Mr. Salazar to be released upon payment of a $6,000 bond.

After the Court granted the TRO, it deferred ruling on Mr. Salazar's motion for a preliminary injunction because the parties reached an agreement that they would move the BIA to

reopen the bond determination to consider Mr. Salazar-Leyva's two arguments above. *See* Docket No. 28 (order). Subsequently, in February 2019, the BIA issued an order, stating that it was reopening bond proceedings, vacating its decision, and remanding to the IJ

> for further consideration of [Mr. Salazar's] dangerousness in light of our intervening precedential decision in *Matter of Siniauskas*, 27 I&N Dec. 207, 209 (BIA 2018) (holding that "[d]riving under the influence is a significant adverse consideration in bond proceedings," and that an alien with significant family and community ties has the burden of showing that "they mitigate his dangerousness because of his drinking and driving").

Mot, Ex. A (BIA Order at 2); *see also* Mot., Ex. A (BIA Order at 3) (stating that "[t]he record is remanded for further proceedings consistent with the foregoing opinion and for the entry of a new decision").

Currently pending before the Court is Respondents' motion to dismiss. Respondents argue that Mr. Salazar's habeas petition is now moot in light of the BIA's order vacating its prior decision and remanding to the IJ for a new bond determination. Having considered the parties' briefs and accompanying submissions, as well as the oral argument, the Court hereby **GRANTS** Respondents' motion.

### I. DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. Because mootness "pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under [Rule] 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (adding that "Rule 12(b)(1) jurisdictional attacks can be either facial or factual").

"A case becomes moot when 'it no longer present[s] a case or controversy under Article III, § 2, of the Constitution.' In order to satisfy the case-or-controversy requirement, the parties must have a personal stake in the outcome of the suit throughout 'all stages of federal judicial proceedings.'" *Wilson v. Terhune*, 319 F.3d 477, 479 (9th Cir. 2003).

In the instant case, Mr. Salazar asked for the following relief in his habeas petition: an order granting the petition and "directing the [BIA] to issue a new decision that complies with the law." Pet. at 22 (Prayer for Relief ¶ 5). As Respondents argue, the BIA's decision to vacate its

prior decision has essentially granted Mr. Salazar the relief he seeks, and therefore the case is moot. *Cf. Abdala v. INS*, 488 F.3d 1061, 1065 (9th Cir. 2007) (indicating that, where "the habeas petitions raised claims that were fully resolved by release from custody," "the petitioners' claims were rendered moot because successful resolution of their pending claims could no longer provide the requested relief" – for example, "where a petitioner only requested a stay of deportation, his habeas petition was rendered moot upon his deportation[;] [l]ikewise, a petitioner's release from detention under an order of supervision 'moot[ed] his challenge to the legality of his extended detention'").

Mr. Salazar, however, argues that, even though the BIA has vacated its prior decision, his habeas petition still is not moot for two reasons: (1) the BIA's vacatur order has collateral consequences and (2) an exception to mootness – *i.e.*, the voluntary cessation doctrine – applies. The Court does not agree.

As to collateral consequences, Mr. Salazar argues that, because the BIA did not make a specific ruling on the two errors he asserted in his habeas petition, the same errors could be repeated either on remand before the IJ or on appeal of the IJ decision to BIA. But this is entirely speculative.

> For a collateral consequence to present a continuing live case or controversy, it must be a *concrete* legal disadvantage, and not merely a speculative or contingent injury. *See Spencer v. Kemna*, 523 U.S. 1, 14-16 (1988) (rejecting petitioner's arguments that his petition to invalidate an order revoking his parole was not moot because of the potential consequences a parole revocation could have on future civil or criminal proceedings as too contingent or speculative); *see also Domingo-Jimenez v. Lynch*, No. C 16-05431 WHA, 2017 U.S. Dist. LEXIS 7782 (N.D. Cal. Jan. 19, 2017) (rejecting petitioner's argument that the allegedly unconstitutional reliance on a police report to deny him bond at an earlier bond hearing could negatively impact his asylum proceedings and potential future bond hearings as too speculative, and dismissing petitioner's habeas petition as moot).

*Perez v. Murray*, No. 18-cv-01437-JSC, 2018 U.S. Dist. LEXIS 95483, at *4-5 (N.D. Cal. June 6, 2018) (emphasis added). Here, it is entirely possible that, on remand, the IJ could make a finding of no dangerousness and thus allow for release on bond – as the IJ did in the first instance before the BIA overruled the IJ, which then led to the instant habeas petition. It is also possible that, on

remand, the IJ could make a supported factual finding of dangerousness because of Mr. Salazar's prior incidents driving under the influence, such that domestic violence would not be an issue that all. The problems asserted in the petition herein may never arise.

Mr. Salazar argues still that the voluntary cessation doctrine applies such that his habeas petition is not moot. "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982). The reason why is fairly straightforward: a dismissal based simply on voluntary cessation "'would permit a resumption of the challenged conduct as soon as the case is dismissed.'" *Bell v. City of Boise*, 709 F.3d 890, 898 (9th Cir. 2013). Thus, "[t]he standard for determining whether a defendant's voluntary conduct moots a case is 'stringent.'" *Id.*

> When a party abandons a challenged practice freely, the case will be moot only
>
>> "if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur" . . . . The "*heavy burden* of persuading" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*United States v. Brandau*, 578 F.3d 1064, 1068-69 (9th Cir. 2009) (emphasis in original).

Here, however, the BIA's decision to vacate is not fairly deemed a "true" voluntary cessation because this Court's TRO decision was what led to ICE's motion to reopen and the BIA's decision to do so. *Cf. Or. Nat. Res. Council, Inc. v. Grossarth*, 979 F.2d 1377, 1379 (9th Cir. 1992) (stating that "the [Forest] Service's cancellation of the Auger Sale and its announcement that it would prepare an [Environmental Impact Statement] in compliance with NEPA for any future sales was not a voluntary cessation within the meaning of that doctrine, but was instead the result of [plaintiff's] successful administrative appeal"). In any event, the allegedly wrongful behavior cannot reasonably be expected to recur (for the reasons stated above).

///

///

///

4

## II. CONCLUSION

Accordingly, Respondents' motion to dismiss based on mootness grounds is granted. In so ruling, the Court notes that it is not barring Mr. Salazar from filing a new habeas petition if the bond hearing results in a new violation of the law. Mr. Salazar may ask that any such new habeas petition (if filed) be related to the instant case. Respondents stated that they would not oppose relation.

This order disposes of Docket No. 60.

**IT IS SO ORDERED**.

Dated: May 1, 2019

_____
EDWARD M. CHEN
United States District Judge